THE HOPPE & STRUB BOTTLING CO. v. SACKS.

REFUSING TO ACCEPT A SMALLER SUM IN FULL SATISFACTION OF A CLAIM.

> Where a debtor offers his creditor a less sum than the latter claims is due him and which he is asked to accept and give a receipt in full for the amount claimed by him and for all claims that he had upon the former, all of which the latter refused to do, and the jury in a trial subsequently had, find that such creditor is entitled to a larger sum than that offered him: *Held*, that such creditor would be entitled to such larger sum, together with interest on the same from the time that his original claim became due.

ERROR to the Court of Common Pleas of Lucas county.

HAYNES, J.

A petition in error is filed in this case for the purpose of reversing the judgment of the court of common pleas and to set aside a verdict which was rendered in that case in favor of Casper Sacks against the Bottling Co. There are quite a large number of errors assigned in the petition in error and quite a large number of grounds in the motion for a new trial, why the verdict should be set aside, and why the judgment should be reversed.

Briefly, the petition sets up that Casper Sacks, who is a contractor, entered into an arrangement or agreement with the Bottling Co., whereby he agreed to excavate a certain cellar upon a lot in the city of Toledo, upon which lot the Bottling Co. was about to erect a building. He avers that the price that he was to receive was $600, and he avers that he was to fill a small portion of the street near the building, and fill in somewhere around the building, and the remaining portion of the earth taken from the cellar he was to remove from the cellar and take away. In the second cause of action, repeating these statements, he further sets up that there was an invariable custom or usage among excavator contractors in Toledo, whereby the earth that was taken from a cellar under conditions and contracts similar to this, belonged to the contractor, and that usage or custom was well known to both plaintiff and defendant, and they were both familiar with it. Then he proceeds to aver that in excavating the cellar he did fill up the street, put some of the earth around the building, as he had agreed, to the satisfaction of the Bottling Co., and that the balance of the earth, which he avers, belonged to him, he took and carried away to the extent of a certain number of cords, to-wit: 110 cords; and that it was of the value of $220. He asks judgment for $600, the original contract price, and for $220, the value of the earth taken away.

It turned out, upon coming to excavate the cellar, that they found in the bed of the cellar a very fine quality of building sand, said to be one-third in quantity of the earth that was to be taken from the cellar, and it is agreed that the building sand was of the value of $2 per cord in the Toledo market at that time.

It appears in the testimony that in taking out the earth a portion of it was carried onto the adjoining lot, and perhaps a part of it on the Bottling Co.'s lot and piled up. Soon after this occurred, a controversy arose between these parties as to who owned the sand, which resulted in some of the sand being taken away by the defendant in error, Sacks, and in a portion of it being used by the Bottling Co. for the purpose of erecting their building—mixing mortar—and the balance of it the Building Co. scraped back onto its lot, and sold and disposed of it as it saw fit.

An answer was filed denying the main portions of the contract as set up by the plaintiff and the custom and various other matters set forth in the petition. A reply was filed to that answer.

Upon the issues thus joined between the parties the case came for trial in the court of common pleas, and a jury was impanelled, the case was heard, and a verdict was rendered for the plaintiff below—the defendant in error here—for the sum of $751.65. Thereupon a motion for a new trial was interposed, was argued and overruled, a bill of exceptions was taken embodying the testimony, and the case was brought here for review.

It is quite evident that there has been a good deal of feeling in this case; that is to say, as between the parties, it has been fought with a good deal of zeal, and it has been argued with great earnestness and ability by the respective counsel for the plaintiff in error and the defendant in error. Sacks testifies that seeing a notice that the Bottling Co. desiring to have a cellar excavated for that building, he went to see the parties, was referred to one Johnson, who was a contractor, and some interviews took place between them. Johnson and he went to see the ground and looked it over, after which Sacks put in a bid for $648. Other parties put in bids; and after the bids were in Sacks saw Mr. Hoppe, the president of the Bottling Co. A conversation was had be-

tween them, and Sacks claims and testifies that as a result of that conference, it was agreed that he was to do the work for $600; that he was to fill in around the street and around the buildings as I have already stated, and that the residue of the earth that should be taken from the cellar should belong to him. Sacks offered testimony tending to prove that after the sand was discovered, statements were made by Mr. Hoppe, the president of the company, that the sand belonged to Mr. Sacks, and he detailed some other conversation tending to show that up to the time of those alleged conversations, at least, it was understood between them, and agreed between himself and the Bottling Co., through its agents, that the sand belonged to him, and he was to have it. On the part of the defense it is claimed that in these conversations it was arranged that some of the earth should go into the street and around the building, and that the Bottling Co. should find a place to put the balance of the earth; that Sacks was then to take the earth to a place it should provide; and it claims that its officers saw some of the officers of the city, and obtained the consent of those officers that the earth might be put in certain streets of the city.

At the opening of the case, and perhaps in the testimony of Sacks himself, the plaintiff below offered testimony tending to prove the existence of the custom and usage which was set up in his petition, and sundry witnesses were permitted to testify in regard to that custom against the objection of the defendant, and its exceptions were taken and duly noted. After the testimony was admitted by the court, finally it came in the testimony of one of the witnesses to a point where this question was asked, which was substantially a question which had been put to several of the witnesses:

"Q. Where a contract for excavating in the city of Toledo provides that the contractor shall do certain filing from the excavated material, and that he shall remove the balance of the surplus from the premises, without saying to where, tell us whether or not there is any uniform or universal custom in Toledo in the excavating business with reference to the ownership of such material. (Objected to.)

"The Court—I would like to ask counsel on the other side if they propose to offer testimony on this subject?

"Mr. Pilliod—We say that it is rulable and in practice among the building trades in Toledo, that when no reservation is made as to the earth excavated, it is then the privilege of the excavator contractor to deliver the earth excavated wherever he sees fit; and it is only where the dumping ground is found by the owner that the rule does not apply.

"The Court—In that view of the case the testimony is immaterial.

"Mr. Pilliod—In view of this, the testimony should be withdrawn from the jury.

"The Court—In view of the statement of counsel the testimony in regard to the subject will be disregarded.

"Mr. King—It is simply all waived by reason of their admission.

"The Court—It becomes immaterial in view of the admission.

"Mr. King—I don't see any necessity to withdraw it from the jury.

"The Court—I don't see that it matters one way or the other.

"Mr. Pilliod—We desire to except.

"The Court—I have said the matter of custom is immaterial and unimportant."

Nothing more was said about the custom until it came to the charge of the court. After stating the case, the court stated the issues in this manner to the jury:

"The sole dispute between the parties—and which you must decide from all the evidence in the case—relates to the ownership of the sand and to the alleged appropriation of it by the defendant. It is claimed by the plaintiff that it was agreed between him and the defendant that some of the material excavated from the cellar should be used by him in filling a certain part of the lot upon which the excavation was made, and also the street in front of the lot, and that the balance of material so excavated should be removed or taken away by him from the premises. The plaintiff alleges that under the contract he became the owner of the material which was not used in the filling of the lot and the street; that the defendant refused to allow him to take his surplus material away, and wrongfully appropriated it to its own use, and for these reasons the plaintiff asks in this action that he may recover of the defendant the value of the material that was so appropriated.

"The defendant denies that the contract between them for the excavation was such as alleged by the plaintiff. On the contrary, the defendant alleges that by the contract the defendant agreed to furnish a dumping ground where the material to be excavated was to be placed, and that it did not furnish such dumping ground, and that the excavated material was placed thereon, and that no part of such material belonged to the plaintiff; and for these reasons the defendant says that the plaintiff is not entitled to recover in this action for any part of said material.

"These are the claims of the parties upon the one side and the other. If you find from the evidence in the case that the contract was such as alleged by the plaintiff, then the plaintiff was the owner of the surplus material, and deposit or dispose of it however or wherever he saw fit, thereby the defendant relinquish all its rights or title to such surplus material. But, if you find from the evidence that the contract was such as is alleged by defendant, then the plaintiff did not become the owner of the excavated material. If by contract the plaintiff was required to deposit the excavated material at a place or places designated by the defendant, then the plaintiff had no right to appropriate the material to his own use.

"During the trial of this case the plaintiff offered evidence as to a custom prevailing here in Toledo at the time of this contract, that under such a contract as the plaintiff claimed this contract was, and in accordance with the course of dealings among parties engaged in the excavating business, the excavated material belongs to the excavating contractor. This evidence as to a custom, as I have already said, during the course of the trial, has become immaterial and unimportant, because it is admitted by defendant in the case, that in case such a contract was made as is claimed by the plaintiff, the sand in controversy belonged to the plaintiff, and he had the right to do it. Therefore evidence as to a custom is entirely out of the case; and the question which you must determine from the evidence in the case is, what was the contract that was made between the parties? Was it such a contract as is alleged by the plaintiff, or was it such a contract as is alleged by the defendant?"

And thereupon the court proceeds to state that the plaintiff has the affirmative of the issue, and that the jury should decide from the whole of the evidence.

This charge of the court was not excepted to, nor, I believe, were any requests made by either party to the court to make a charge in the case. It is alleged, however, in the petition in error, as one of the grounds for reversal, that there was error in the charge of the court. It was also alleged in the motion for a new trial as a ground for setting aside the verdict, that there was error in the charge of the court. We have read the charge through very carefully, and it seems to us that the presiding judge upon that trial submitted the case fairly to the jury, and that the questions of fact that were in issue between the parties in the case were fairly and properly submitted to the jury, with proper and appropriate statements in regard to the law, by the trial court.

It is alleged that the verdict is not sustained by the evidence. Indeed, it is claimed that it is directly contrary to the evidence. We have listened to the reading of the evidence, and have read a great deal of it ourselves. It is one of that class of cases where the jury might find one way or the other; that is to say, you might expect them to find one way or the other. In other words, the testimony was quite closely balanced, and it is a very proper case for the determination of a jury, under all the circumstances of the case—they seeing the witnesses, hearing them testify, having the parties before them. And while it was possible we might have come to a different conclusion, though I don't know that we should, nevertheless, the case having been submitted to a jury, it is certainly one of that class of cases where the court is not authorized to interfere. We cannot say from the evidence that there is manifest error in the action of the jury in that respect; that either the weight of the evidence was against the verdict, or that the verdict was not sustained by sufficient evidence. We therefore decline to interfere with the verdict of the jury.

It was claimed here that the damages were excessive. There were computations made at the time of the hearing of the case which, it seems to us, were such as show that the finding of the jury was substantially correct. It was agreed before us that at the time the sand was taken, the prevailing price in Toledo was $2 per cord, and that it was worth that. That price would amply cover the amount allowed by the jury for the sand, and probably would exceed it.

It was suggested that in the verdict that was given interest was allowed, and it was claimed by counsel that such interest ought not to have been allowed by the jury upon the amount that they found to be due. We do not agree with counsel in that respect. There was testimony tending to prove that at the time Mr. Sacks went to the office to get his pay, a check was drawn, but that check was drawn for $600 only, and the clerk or person in charge at the time, who transacted the business, required Mr. Sacks that he should give a receipt for $648, the amount of his original bid, in full of that debt and of all claims that he had upon the defendant company. He refused to do that. The check laid on the table. Tender was never made of the full amount that the jury found to be due, and the tender that was made, if there was a tender, was never kept up. I believe there was an offer to confess judgment, but that offer was for $600 only. We see no reason why the statute should not apply which allows interest upon sums which become due and unpaid.

There was considerable argument about this question of custom, and many authorities were cited by counsel on both sides; but it looks to us as though, in the light of the admission by one of defendant's counsel, in open court, that there was such a custom, and in view of the contract

such as plaintiff claimed that he made, it would entitle the plaintiff to the surplus earth.

There were questions arising in this case that were not made in the pleadings that were discussed at some length by ourselves; but inasmuch as they were not made in the pleadings, nor argued by counsel, we will not refer to them.

The judgment of the court of common pleas will be affirmed, but without any penalty. Exception will be noted.

*T. J. McDonnell, J. E. Pilliod*, for Plaintiff in Error.

*King & Tracy*, for Defendant in Error.

---

# TERMINATION OF FRANCHISE.